UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN W. MCKINNEY, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> *vs.* ) <br> ) <br> CAROLYN W. COLVIN, *Acting Commissioner of* ) <br> *the Social Security Administration*, ) <br> ) <br> *Defendant*. ) | No. 1:13-cv-01977-JMS-MJD |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff John McKinney protectively applied for disability, disability insurance, and supplemental security income from the Social Security Administration ("SSA") on July 21, 2011, alleging a disability onset date of March 8, 2011. His applications were denied on September 13, 2011, and denied again after reconsideration on October 6, 2011. A hearing was held on August 30, 2012 in front of Administrative Law Judge Joseph L. Brinkley (the "ALJ"), who subsequently determined that Mr. McKinney was not entitled to receive benefits. [Filing No. 12-2 at 23-30.] The Appeals Council denied review, [Filing No. 12-2 at 2-5], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. McKinney has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. McKinney was forty-six years old as of his alleged onset date. [Filing No. 12-5 at 2.] Previously, he had worked on a factory assembly line assembling electrical and circuit boxes for

1

homes. [Filing No. 12-2 at 44-45.] Mr. McKinney claims he has been disabled since March 8, 2011. [Filing No. 12-5 at 2.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on September 15, 2012. [Filing No. 12-2 at 23-30.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. McKinney had not engaged in substantial gainful activity[1] after the alleged disability onset date. [Filing No. 12-2 at 25.]

- At Step Two, the ALJ found that Mr. McKinney suffered from the severe impairments of coronary artery disease status post stent placement and heart attack, peripheral vascular artery disease, hypertension, and obesity. [Filing No. 12-2 at 25-26.]

- At Step Three, the ALJ found that Mr. McKinney did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 12-2 at 26.] The ALJ concluded that Mr. McKinney had the residual functional capacity ("RFC") to perform light work, except he "can never climb ladders/ropes/scaffolds; can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to workplace hazards such as dangerous machinery and unprotected heights; must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity,

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

2

dusts, fumes, gases, odors, etc.; needs a sit/stand option in addition to regularly scheduled breaks (can sit a total of 6 hours in a workday but can sit for 1 hour at a time, then must stand and walk 40 feet before returning to a sitting position; and can stand/walk in 45 minute intervals, for a total of 6 hours in an 8-hour workday)." [Filing No. 12-2 at 26-28.]

- At Step Four, the ALJ found that Mr. McKinney was not able to perform his past relevant work as a brick layer helper, small products assembler, landscape laborer, plumber helper, or pallet builder because these types of work are precluded by Mr. McKinney's RFC. [Filing No. 12-2 at 28.]

- At Step Five, the ALJ found that considering Mr. McKinney's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. Specifically, the ALJ found Mr. McKinney would be capable of working as a small product assembler,[2] parking lot attendant, or shipping/receiving weigher. [Filing No. 12-2 at 29.]

Based on these findings, the ALJ concluded that Mr. McKinney was not disabled and was not entitled to disability benefits or supplemental security income. [Filing No. 12-2 at 29-30.] Mr. McKinney requested that the Appeals Council review the ALJ's decision, but the Council denied that request on October 6, 2011. [Filing No. 12-2 at 2-4.] That decision is the final decision of

---

[2] The Court notes that the ALJ stated that the Vocational Expert ("VE") found Mr. McKinney could not perform his past relevant work as a small products assembler, [Filing No. 12-2 at 28], but then concluded that he, in fact, could perform that type of work, [Filing No. 12-2 at 29]. Mr. McKinney does not raise this issue, but the Court clarifies that the VE testified that, while Mr. McKinney could not perform his specific past job as a small products assembler, he could perform that job under certain circumstances. [Filing No. 12-2 at 62-63.] The VE reduced the number of small products assembler jobs Mr. McKinney would be able to perform by half, to account for that finding. [Filing No. 12-2 at 63.]

3

the Commissioner for purposes of judicial review, and Mr. McKinney subsequently sought relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are

4

not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
#### DISCUSSION

Mr. McKinney raises only one argument on appeal: Whether the ALJ erred in determining that Mr. McKinney's testimony about his disability was not credible. [Filing No. 16 at 10-13.] Specifically, Mr. McKinney argues that the ALJ erred in finding that he was not credible because the ALJ did not address the opinion of one of the State Agency medical experts (Dr. J. Sands) who said that Mr. McKinney was credible. [Filing No. 16 at 10.] Mr. McKinney contends that because the ALJ afforded substantial weight to the opinions of the State Agency medical experts, he should have also afforded substantial weight to the finding by Dr. Sands that Mr. McKinney was "credible as the evidence in the file supports the alleged impairments." [Filing No. 16 at 11.] Mr. McKinney argues that because the ALJ never mentions this finding of credibility by Dr. Sands, it is impossible to determine whether he considered this opinion in finding him not disabled. [Filing No. 16 at 11.]

5

He asserts that under [20 C.F.R. 404.1527](#) and [20 C.F.R. 416.927,](#) the ALJ must consider, and explain the weight given to, findings of credibility by State Agency medical experts. [[Filing No. 16 at 11](#).] Mr. McKinney also contends that the VE stated that a person who is incapable of maintaining time and position for 30 minute blocks consistently is unemployable, thus making Mr. McKinney unemployable. [[Filing No. 16 at 11](#).]

The Commissioner responds that Mr. McKinney's argument is based upon a misinterpretation of the evidence in the record. [[Filing No. 19 at 4](#).] The Commissioner argues that Dr. Sands only found Mr. McKinney to be credible in relation to the impairments he claimed to have at the time of the assessment. [[Filing No. 19 at 4](#).] The Commissioner contends that had Dr. Sands found Mr. McKinney's allegations of "disabling pain/limitations" to be credible, he would not have found him capable of performing "light level work." [[Filing No. 19 at 5](#).] The Commissioner also argues that Dr. Sands' opinion acknowledging Mr. McKinney's impairments was in no way contrary to the findings of the ALJ, thus he was not required to discuss that portion of Dr. Sands' opinion in the decision. [[Filing No. 19 at 5](#).] Further, the Commissioner points out that Mr. McKinney does not address the reasons the ALJ gave for finding Mr. McKinney not credible, specifically pointing to Mr. McKinney's testimony that he stopped working because of a plant shut down, subsequently continued looking for work, and applied for unemployment. [[Filing No. 19 at 5](#).] Lastly, the Commissioner points to inconsistencies in Mr. McKinney's claims, citing his inability to sit for extended periods contrasted by evidence that he was able to drive 50 miles to his hearing without negative effect. [[Filing No. 19 at 6](#).]

The party who "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *[Shinseki v. Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009)](#)* (citations omitted). Because "the ALJ is in the best position to

determine a witness's truthfulness and forthrightness[,]" the Court "will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotations omitted) (citations omitted); *see also Prochaska*, 454 F.3d at 738 (quotations omitted) ("We afford a credibility finding considerable deference, and overturn only if [it is] patently wrong."). However, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Shideler*, 688 F.3d at 311 (citations omitted).

"To evaluate credibility, an ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (referencing SSR 96-7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila*, 573 F.3d at 517.

Mr. McKinney argues that the ALJ did not give proper weight and consideration to the opinions of the State Agency medical experts, but the ALJ noted that he afforded their opinions substantial weight in his decision. [Filing 12-2 at 26-28.] Mr. McKinney relies heavily upon Dr. Sands' statement that he was "credible as the evidence in the file supports the alleged impairments," [Filing No. 16 at 11.] Taken out of context, the comment by Dr. Sands that Mr. McKinney was credible might be persuasive. But in the larger context that Dr. Sands found Mr. McKinney to be capable of performing light work, the comment merely indicates that Dr. Sands believed Mr. McKinney's claims that he suffered from several impairments, and not a blanket finding that he believed Mr. McKinney was disabled. The ALJ's opinion is consistent with Dr. Sands' opinion, read as a whole. The ALJ, too, found similar impairments.

7

The ALJ further noted that Mr. McKinney was able to function independently, and that there was ample evidence that he stopped working because of a plant closing, not because of any disability. [Filing No. 12-2 at 28.] It is proper to consider a claimant's layoff in a credibility assessment, as one of a number of factors. *See, e.g.*, *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ also pointed out that Mr. McKinney collected unemployment after the plant was closed, indicating that he was holding himself out as "ready, willing, and able to work." [Filing No. 12-2 at 25.] The Seventh Circuit Court of Appeals has held that a claimant's decision to apply for unemployment benefits represents to state authorities and prospective employers that he is able to work, and that this is also "one of many factors" in a credibility analysis. *Schmidt v. Barnhardt*, 395 F.3d 737, 746 (7th Cir. 2005).

This Court defers to the ALJ's adverse credibility determination unless it is patently wrong. *Shideler*, 688 F.3d at 310-11. Mr. McKinney has failed to address the ALJ's reasoning for finding him to be only fairly credible and rejecting his claim of disability, including his testimony that he stopped working due to layoff not disability, and that after the layoff he attempted to find new employment while collecting unemployment benefits. [Filing No. 12-2 at 43-45.] Further, Mr. McKinney takes Dr. Sands' comment regarding his credibility out of context, and ignores Dr. Sands' ultimate finding that Mr. McKinney is capable of performing light work with limitations that are consistent with his RFC. [Filing No. 12-7 at 78-84.] Accordingly, the Court concludes that the ALJ's adverse credibility determination was not patently wrong, and affirms the Commissioner's decision.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for

by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue,* 364 Fed.App'x 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id*. Taken together, the Court can find no legal basis presented by Mr. McKinney to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

January 22, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**